Conover v. Walling.

PETER S. CONOVER, appellant, and ALFRED WALLING and others, commissioners, &c., respondents.

Where objection is made to a sale by commissioners, by parties interested in proceedings for partition before the Orphans Court, the matter should be brought before such court by *petition*.

It is not proper to concert with an auctioneer a private signal denoting a bid at a sale of property by public auction. Such a contrivance gives an advantage to one person over the other fair and open bidders at the sale.

The mere fact that more is offered for the property sold at auction than it was cried off for, is no justification for a court refusing to confirm the sale. The practice of the English courts, in opening bids, has not been adopted by the courts of this state.

It is the custom in New Jersey, at public sales, where a bid is fairly claimed by two or more persons, to put the property up again at the price bid, and as at the bid of such one of the competitors as the auctioneer may declare entitled to it.

Where a mistake occurs in the biddings, which is brought to the knowledge of the commissioners, and they do not correct it by having the property again set up in the ordinary way, and it appears that a less price was obtained than otherwise would have been offered, the sale should be set aside.

A fair bidder at such sale, to whom the property is struck off, being an innocent party, ought to be put to no expense in the proceedings to set aside the sale, either in the Orphans Court or on the appeal to the Prerogative Court.

On the second day of September, A. D. 1851, G. P. Conover and Sarah H. Conover made their application, by petition, to the Orphans Court of the county of Monmouth for a division of real estate, of which they and others, named in said petition, were tenants in common.

The commissioners, Alfred Walling, John C. Conover, and William Statsen, having reported that a partition of the lands could not be made without great prejudice to the owners thereof, the court ordered a sale of the said real estate.

On the second of December, A. D. 1851, the commissioners

P*

made their report of sales to the court in the usual form, and among other matters, stating that they had sold the land in two tracts. "Tract the 1st, No. 1, being the westerly half of said real estate, containing one hundred and fifty-one acres, more or less, situate in the township of Atlantic, in said county of Monmouth, bounded on the north by lands of H. P. Conover and John S. Ely, on the east by lands of Daniel Bray and the other half of said real estate sold Peter S. Conover, on the south by lands a part of the other half of said real estate sold Peter S. Conover by said commissioners and lands of Polhemus Smock, on the west by lands of Gilbert H. Vanmater, was struck off and sold to Daniel H. Ellis for the sum of eighteen thousand three hundred and seventy-five dollars ($18,375). Tract the 2d, No. 2, being the easterly half of said real estate, containing one hundred and forty acres, more or less, situate in the township and county aforesaid, bounded on the north by land late a part, &c., (describing the same) was struck off and sold to Peter S. Conover for the sum of twelve thousand five hundred dollars."

On the coming in of this report, an application was made, on behalf of the petitioners for division and of the other owners of the land, to disaffirm and disapprove so much of said report as related to tract No. 2, on the ground that, owing to a misunderstanding on the part of the auctioneer who conducted said sale, the said tract sold for much less than it otherwise would have brought, and that the commissioners ought not, under the circumstances of the case, to have acknowledged Peter S. Conover as the highest bidder.

Witnesses were examined, and evidence taken before the Orphans Court, by which it appeared that Sarah Holmes, who was the owner of one half of the estate ordered to be sold, employed Daniel H. Ellis as her agent to bid for her at the sale, and authorized him, in writing, to bid $20,000 for the first tract, and $15,000 for the second tract, struck off to Conover; that prior to the sale, Ellis made an arrangement

Conover v. Walling.

with Henry W. Wolcott, the auctioneer at the sale, agreeing upon a private signal, which the auctioneer should take for a bidding; that it was arranged between them that as long as Ellis should keep his thumb in his button-hole he should be considered a bidder, and Wolcott should increase the bid in the same ratio as the preceding bidder; that the first tract was struck off to Ellis, he being the highest bidder, and bidding in the manner arranged as before mentioned; that Ellis kept his thumb in his button-hole during the whole of the bidding for the second tract, and was under the impression the auctioneer was bidding for him under the arrangement; that when the second tract was struck off to Conover, Ellis claimed the bid under the arrangement, but the auctioneer declared he considered that arrangement as relating only to the first tract.

On the hearing before the court, Sarah Holmes executed and delivered to the commissioners a bond binding herself to bid on a resale the sum of $13,500 for the tract in dispute.

After hearing the proofs and argument of counsel, the court, as to the second tract, ordered as follows: "And the court having further examined the said report, and it appearing to the court, by due proof, that the sale of the parcel of land described in said report as tract the 2d, No. 2, and shown on said map, was made upon due and legal notice as stated in said report, but that, owing to a misunderstanding between the said commissioners, the auctioneer, and Daniel H. Ellis, one of the bidders, as to whose bid it was, the said tract No. 2 was struck off to said Peter S. Conover, mentioned in said report, for a sum much less than it otherwise would have brought, and that the said commissioners ought not to have permitted the said tract No. 2 to be finally struck off to the said Peter S. Conover for the price in said report named, and that a confirmation of said report, so far as regards said tract No. 2, would operate great loss and injustice to the owners, the court do hereby disapprove and disaffirm said report and sale so far as relates to said tract No. 2, and do hereby refuse to approve the same so far as relates to said

tract No. 2, and do refuse to confirm the same so far as relates to said tract No. 2, and do order and direct and adjudge that said report and sale so far as regards said tract No. 2, and said sale of tract No. 2 to Peter S. Conover, be and the same is hereby annulled, set aside, and for nothing holden."

Peter S. Conover appealed from this order of the Orphans Court to the Prerogative Court, and stated and submitted to the court the following grounds of appeal:

1st. That the sale and report of said commissioners was an entirety, and could not be confirmed in part only.

2d. That it appeared, upon the hearing, that the sale to your petitioner was for a full price, without any illegality or fraud or malconduct on his part or on the part of any other person, and the court could not, at its mere volition and discretion, set the same aside.

3d. That the presentation of a bond in open court by Peter Vredenburgh, esq., counsel for those opposing said confirmation in behalf of Sarah Holmes, binding her to give for the property $1000 more than it was struck off at the first sale, was illegal, and an improper interference with the judgment of the court.

4th. That the court decided that the commissioners should have set the property up a second time at the sale, although fairly struck off to your petitioner, and the contesting bidder refused to have it set up again when offered by the auctioneer and commissioners.

5th. That the contesting bidder expressly agreed to leave to the auctioneer and commissioners, or one of them, the question who was entitled to the bid at said sale, and it was decided in favor of your petitioner.

6th. That the courts in this state have no legal right to open biddings, as in this case, for a mere increase in price.

7th. That the order of said court in refusing to confirm said sale should have likewise made an order for further sale of said property, which was not done.

8th. That the court did not order and adjudge that the

costs and charges of supporting said sale should be paid out of said estate, as it was bound to do.

9th. That the court did not order and adjudge that the costs, charges, and expenses incurred by your petitioner should be paid out of said estate, as it was bound to do.

10th. That the order and decree is in other respects informal, erroneous, and illegal.

*W. L. Dayton*, for appellant.

*P. Vredenburgh*, for respondent.

THE ORDINARY.  At the last term of this court a motion was made, on behalf of the respondents, to dismiss this appeal, on the ground that the confirmation of the sale was a matter entirely in the discretion of the Orphans Court, and that an appeal would not lie from such an order of that court as was made in this case.  I decided that the appeal was properly taken.  I refer to the opinion then delivered as part of the history of the case.

The question now is, whether the order of the Orphans Court shall be affirmed.

I notice an informality in the proceedings of the Orphans Court, for the purpose of calling attention to it, that it may be avoided in future similar proceedings.

As the decrees and orders of the court below are matters of review in this court, any material matter or proceeding upon which such decrees and orders are founded should be so certified as to show the regularity and legality of the important steps taken in the progress of a case.

There is nothing upon the face of the proceedings sent here by the Orphans Court to show how the question arose before them, as to the mistake and misapprehension in conducting the sale, upon which they based their order now appealed from.

There is no dispute that the resale was asked for by or on behalf of the owners of the land, and was resisted by Peter S. Conover; but this does not appear on the records of the

court. The matter should have been brought before the Orphans Court by petition, which would have made the whole case complete, and would have been a proper foundation for the subsequent action of the court.

The review of this order of the Orphans Court has embarrassed me very much. If the question presented was between Peter S. Conover and Mrs. Holmes, or Peter S. Conover and Daniel Ellis, and in which no one else had an interest, I should have no doubt as to the law or equity applicable to this controversy. Mrs. Holmes or Mr. Ellis is not entitled to the favorable consideration of the court. It was the contrivance between Mr. Ellis, as the agent of Mrs. Holmes, and Mr. Wolcott, the auctioneer, and which was adopted for the purpose and with the expectation that Mrs. Holmes would thereby be enabled to purchase the property at a less price than by taking her chance on a like footing with her competitors at the sale, that has occasioned all the difficulty.

Mr. Conover was an open and fair bidder at the sale. His conduct is not impeached. What he said or did is no way connected with the mistake and misapprehension complained of. The property was not struck off to him at an inadequate price. By his contract to take the property at the price at which it was struck off to him, he acquired rights which a court of justice ought to protect, as well as the rights and interests of the owners of this property. But it is not Mrs. Holmes or Mr. Ellis who seeks redress for an injury which has been done them, but the owners of the property ask the interference of the court in the protection of their rights. The commissioners and auctioneer are the agents for both the owners and the bidders, who are alike entitled to relief against an injury which has been done them by any mismanagement, fraud, or accident on the part of their agents, provided the wrong committed can be remedied without doing greater violence to the rights of an innocent party.

The mere fact that Mrs. Holmes now offers to bid a thousand dollars more on a resale of the property, is no justification for the court's refusing to confirm the sale. The prac-

Conover *v.* Walling.

tice of the English courts in opening bids has not been adopted by our courts. Its tendency has been considered prejudicial to judicial sales.

But the Orphans Court did not proceed on this ground in refusing to confirm the sale. They state, in their order, that they refuse to confirm the sale because, owing to a misunderstanding between the said commissioners, the auctioneer, and Daniel H. Ellis, one of the bidders, as to whose bid it was, the land was struck off to Peter S. Conover for a sum much less than it otherwise would have brought, and that the said commissioners ought not, under the circumstances, to have permitted the land to be struck off to Conover.

Was there such a misunderstanding as prevented the property bringing a larger price than it would otherwise have brought?

Did the commissioners do wrong in permitting the property to be struck off to Peter S. Conover?

If both these questions can be answered in the affirmative, the Orphans Court did right in refusing to confirm the sale. For if the commissioners did wrong in permitting the property to be struck off to Conover, and thereby sacrificed the interest committed to their trust, the rights acquired by Conover were in violation of the rights of others, and are entitled to no superiority. By the use of the term *wrong* no moral guilt is imputed—no actual fraud—but such indiscretion and want of prudence as worked an injury, and ought to have been avoided.

That there was a misunderstanding between the auctioneer and Mr. Ellis, who was a bidder, is not disputed. Prior to the sale, Ellis saw the auctioneer, and told him he intended to bid for the property; that during the bidding he would put his thumb in the button-hole of his coat, and while it remained there the auctioneer should continue bidding for him, advancing each bid in the ratio or proportion of the immediate preceding competitor's bid. To this the auctioneer assented. The first tract was set up. Ellis bid for it in the manner agreed upon. His bid was taken accordingly by the

auctioneer, and the first tract was struck off to him for the sum of $18,375.

The second tract, the one in dispute, was then set up. Ellis stood a short distance from the auctioneer—immediately in front and in view of him—continuing the signal which had been proposed by Ellis, and which the auctioneer had agreed to take for his bidding. The auctioneer struck off the property to Peter S. Conover for $12,500. Ellis immediately claimed the bid.

There was no dispute as to Ellis having given the signal, and it is rather singular that the auctioneer should have made the mistake he did, and that after committing a mistake for which he was entirely to blame, should have persisted in declaring Mr. Conover the bidder.

Now how does the auctioneer account for the mistake? He says he did not consider the arrangement between Mr. Ellis and himself as extending to the second tract. But the history of the arrangement shows he had no right to adopt any such conclusion. To say the least of it, his conduct as auctioneer, in reference to this matter, was most imprudent and indiscreet.

When the arrangement was made, Ellis asked the auctioneer if he knew which part of the property was to be sold first. The reply was, he did not—he had heard nothing about it—but he presumed they would sell the part with the buildings first. Mr. Ellis replied, he thought so too. This is all that was said in reference to a *first* or a *second* tract, or as to the manner in which the property would be sold. Ellis then told him that "he wished to be a bidder, and a secret bidder." This is the account given by Mr. Wolcott himself, when sworn as a witness before the Orphans Court. He concludes the account of the arrangement between them, after stating Ellis' proposition as to the manner he would bid, in these words : " I agreed to that, and told him I would attend to it. It was understood between us, as long as Mr. Ellis kept his thumb in that position, I was to consider him a bidder."

Now, what right had Mr. Wolcott to conclude that this arrangement referred only to the first tract, and more especially when it was not known by either of them which tract was first to be sold. The mystery of this mistake is not lessened by the subsequent conduct of the auctioneer.

He says he stood in the same position when he cried off the second, as when he cried off the first tract; that Mr. Ellis stood nearly in the same position, moving in the crowd. He did not notice that Mr. Ellis had his thumb in the same position; he was where he could have seen his thumb in his lappel, if he had noticed; he did not look to see whether it was so or not; Mr. Ellis remained near the same place when he cried the second, as when he cried off the first tract; he could have seen him; he does not recollect that he saw Mr. Ellis' thumb in that position during the second sale; he did not notice it when he was in the act of striking it off; if he had have noticed it he should not have taken it, because it was a heavy property, and he thought Ellis was fully satisfied with the purchase of the first farm, and if he had wanted to purchase the second, he (the auctioneer) thought Mr. Ellis would have told him at the interview.

It is unnecessary to comment on this conduct of the auctioneer to show that the responsibility for the mistake, and the trouble that it has produced, rests altogether with him. I have no doubt as to the upright intentions of Mr. Wolcott. But in this case he did not act the part of prudence.

That the consequence of this mistake was a reduced price of the property, is beyond a reasonable doubt. Mr. Ellis was the agent of Mrs. Holmes. She had authorized him, in writing, to bid for it $15,000. He declares it was his intention to have bid that sum, if necessary. Immediately after the sale, Mr. Conover refused to take a thousand dollars for his bargain. From those facts, we may reasonably conclude that, but for this mistake, the competition would have been such as very materially to have increased the price of the bid.

The question remains, as to the propriety of the commissioners in allowing the property to be struck off to Conover.

If this mistake was brought to the knowledge of the commissioners, at a time when it was proper to correct it, and when it might have been corrected consistently with the rights of all parties in interest, and the commissioners refused to correct it, they did wrong, and the Orphans Court were right in not confirming the sale.

It is customary in New Jersey, at public sales, where a bid is claimed by two or more persons, and there is really good ground for dispute as to the claim of the bid, to put the property up again at the price and at the bid of such one of the competitors as the auctioneer may declare in his judgment entitled to it. This is the fair way of settling such disputes, and it is a right which the owner of the property claims, and which he will exercise, because it is to his advantage to do so.

If the commissioners did not in this case conduct the sale in the usual way, and the owners of the property have been injured by their proceedings, the commissioners were in error, and the court, having the power to correct that error, ought to do so, unless the commissioners can in some way justify themselves in pursuing the course they did.

It is insisted, on behalf of the appellant, that when Ellis claimed the bid, the commissioners offered to set the property up again; that Ellis refused, and declared he would leave it to the auctioneer; that Conover acquiesced, and that the auctioneer decided in favor of Conover.

If this is so, there is no ground of complaint against the commissioners. If Ellis declined having the property put up again, it amounted to a refusal on his part to bid any more for the property; and as he was the only competitor to Conover, it was of no advantage to the owners to offer the property further, it might have operated to their detriment, for the effect of it would have been to relieve Conover from his bid. In this view of the case, Ellis declined the usual mode of settling such difficulties, and the commissioners adopted the only course left them, and are not reprehensible for it.

But does the evidence warrant this conclusion? Are the facts such as establish the premises from which it is drawn?

Mr. Wolcott (the auctioneer) says, " When it was struck off, I announced who was the highest bidder. I stated that the highest bidder was Peter S. Conover. When it was announced that Peter S. Conover was the highest bidder, Mr. Ellis claimed the bid. I replied to Mr. Ellis, that if he claimed the bid, it must be set up again, for I did not recognize a bid from him for that part of the property. Mr. Walling (one of the commissioners) spoke up, and said—yes, that was the way to settle the matter, for there were two claimants. Mr. Ellis replied that he would leave it to the decision of the auctioneer. Mr. Conover did not make any objection to that. The decision of the auctioneer was that Peter S. Conover was the highest bidder."

There is nothing in this evidence of Mr. Wolcott to show that Mr. Ellis declined the proposition to have the property put up again, except it can be implied from his reply to the remarks of Mr. Wolcott and Mr. Walling, that he would leave it to the auctioneer.

Mr. Ellis, in his evidence, says he did not wish to make a *fuss*, and said, I will leave it to *you*, by which he meant the *commissioners and the auctioneer ;* that Mr. Walling then said, if there was any dispute it must be set up again; to which Mr. Ellis replied, very well, that is enough, and repeated it once or twice over. He further says, " when he said *that*, I expected it would be put up again, and did not think anything else.

Mr. Walling's testimony does not corroborate that of the auctioneer. He says, " when the property was struck off to P. S. Conover, I recollect that Mr. Ellis claimed the bid. There was something then said about setting it up, and something said about leaving it to the auctioneer, but don't think it was Mr. Ellis. I don't recollect that Mr. Ellis said *" very well."* I think that some one said, leave it to the auctioneer —and Mr. Ellis assented to it.

It does not appear that the other commissioners took any

part in the matter, or that they were consulted or knew of the difficulty. They did not remedy the mista e as they ought to have done, and in the mode customary in conducting such public sales.

One thing is certain, the difficulty was not settled by the commissioners, who were the proper persons, and who ought to have settled it. Taking Mr. Walling's testimony to be correct, it is evident that the commissioners did not act in the matter for the interest of the owners of the property. All the commissioners, Mr. Walling and every one else, who had anything to say, seem to have treated the matter as one in which no person was interested but Mr. Conover and Mr. Ellis.

. That Mr. Ellis did not make any further complaint after it was determined Mr. Conover should have the bid, but permitted the conditions of sale to be signed without remonstrance, does not alter the case. Mrs. Holmes complained, and said there was something wrong. Mr. Hubbard said it was not right. Mr. Ellis' conduct, subsequently, was such as might justly be considered as conclusive, as far as his own individual rights and interest were concerned, but ought not to prejudice the rights of others.

Without scrutinizing the evidence further, I think the impression produced by it is very strong that this property did not bring as large a price as it would have done if the commissioners had, when this mistake was ascertained, put the property up again, and settled it in the usual and customary way.

It was argued, on behalf of the appellant, that the arrangement between the auctioneer and Mr. Ellis was illegal and improper, and ought not to be favored or countenanced by the court. To this I assent. But the more improper and illegal was the conduct of the auctioneer, the more manifest is the wrong committed on the rights of the owners of the property, and the propriety of the court's redressing the grievance.

Upon a careful review of the whole case, I am unwilling

to say that the Orphans Court did wrong in making the decree they did. It must therefore be affirmed.

As to the costs, Mr. Conover must be put to no expense in prosecuting this appeal. He is an innocent party, and became involved in this controversy by the conduct of others, for which he is not responsible.

As the case is before me, I have no right to give directions as to any other costs, except of this appeal; but I have no doubt, as to other costs incurred by Mr. Conover, the Orphans Court will see the propriety and justice of their being paid out of the money raised from the further sale of the estate.